\_\_\_\_ FILED        \_\_\_\_ ENTERED   Magistrate Judge Mary Alice Theiler
\_\_\_\_ LODGED       \_\_\_\_ RECEIVED

NOV 27 2023

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE RAMIREZ,<br><br>Defendant. | CASE NO. MJ23-566<br><br>COMPLAINT for VIOLATION<br><br>Title 8, United States Code,<br>Section 1324(a)(1)(A)(ii) |

BEFORE, MARY ALICE THEILER, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (Illegal Transportation of an Alien, Private Financial Gain)

On or about November 26, 2023, in Whatcom County, within the Western District of Washington, GEORGE RAMIREZ, did knowing and in reckless disregard of the fact that certain aliens, H.S. and K.S., had come to, entered and remained in the United States in violation of law, did transport and move and attempt to transport and move said aliens within the United States by means of transportation and otherwise in

COMPLAINT/RAMIREZ - 1
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

furtherance of such violation of law to help H.S. and K.S. remain in the United States, and did so for private financial gain, and did aid and abet the same.

All in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (B)(i) and Title 18, United States Code, Section 2.

The complainant states that this Complaint is based on the following information:

I, Jordan Dolan, being first duly sworn on oath, depose and say:

## AFFIANT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I, Jordan Dolan, am a Special Agent (SA) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since August 2016. I am currently assigned to the Group 1 at the Office of the Assistant Special Agent in Charge (ASAC) in Blaine, WA and have been assigned to that duty station since November, 2020. My responsibilities include the investigation of federal criminal laws, including financial crimes such as wire fraud, money laundering, intellectual property rights violations, smuggling or importation of counterfeit goods, alien smuggling, and human trafficking.

3. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training in the investigation of various crimes. During my employment with HSI, I have conducted criminal investigations relating wire fraud, money laundering, narcotics smuggling, violations of Intellectual Property Rights, and Child Exploitation Investigations, as well as numerous interviews of defendants, witnesses and victims. I have also written

COMPLAINT/RAMIREZ - 2
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

affidavits in support of complaints, and executed numerous federal arrests, both as part of my own investigations and assisting in other investigations.

4. The information set forth in this affidavit is based upon my own investigation, the investigation conducted by others, and the details related to me by others familiar with this matter. Because this affidavit is made for the limited purpose of establishing probable cause, I have not listed each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that GEORGE RAMIREZ committed the aforementioned crime.

## PROBABLE CAUSE

5. On November 26, 2023, Border Patrol Agent (BPA) Steven Robinson was performing line watch duties along the United States and Canada border, in and around the city limits of Sumas, Washington. Line watch is a blanket term used by agents when referring to their patrol duties. Those duties include responding to sensor activity, looking for signs of cross border entries, checking known crossing locations and remaining highly visible to deter illegal entries. BPA Robinson was operating the Mobile Video Surveillance System (MVSS). Most MVSS are capable of monitoring movement through advanced camera applications.

6. At approximately 12:20 a.m., BPA Robinson advised agents using his vehicle radio that he saw two subjects in Canada getting out of a vehicle that stopped on the border road which runs adjacent to the U.S./Canada International Boundary.

7. BPA Robinson continued to report on the movement of the two subjects as they crossed from Canada into the U.S. at a location not designated as a U.S. Port of Entry and without being inspected. The subjects ran south after crossing the border to an area which contained farm equipment at the north end of Hammer Road. BPA Robinson was unable to see the subjects after they entered the equipment yard.

COMPLAINT/RAMIREZ - 3
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8. Approximately 30 minutes prior to the subjects crossing the border near the area containing farm equipment, BPA Robinson advised agents that a pickup truck parked near the same farm equipment.

9. BPA Robinson advised agents that shortly after the subjects entered the equipment yard, within approximately 3 minutes, he observed a truck exit the property and continue driving south on Hammer Road towards Halvestick Road. I know from fellow law enforcement officers that Hammer Road is a highly utilized route to smuggle undocumented aliens into the U.S. due to its close proximity to the U.S./Canada Border.

10. BPA Lindsay conducted a vehicle stop of the truck (subject vehicle) on Hammer Road before it reached Halvestick Road and approached the vehicle to conduct an immigration inspection. BPA Lindsay identified himself as a Border Patrol Agent and questioned the occupants of the subject vehicle as to their citizenship and whether they were in possession of immigration documents to be, remain, or work in the U.S. legally. The driver, later identified as David Manthey, and front passenger, Paige Fountaine, stated they were citizens of the United States.

11. BPA Lindsay identified three occupants in the rear seat of the subject vehicle: left rear passenger, George RAMIREZ; middle rear passenger, H. S. and right rear passenger K. S. RAMIREZ stated he was a United States citizen. H. S. and K. S. stated they were citizens of India and not in possession of documents to be, remain, or work in the United States legally.

12. The occupants of the subject vehicle were transported to the Sumas Border Patrol Station ("Sumas Station") for further investigation and processing. Following transportation of the vehicle occupants to Sumas Station, BPAs Noblitt and Robinson conducted an inventory of the subject vehicle. While BPA Robinson was searching the rear driver's side of the vehicle, he discovered a loaded handgun underneath the left rear passenger seat. This was the seat in which George RAMIREZ was seated.

13. The handgun was identified as a Lorcin L25, .25 caliber, bearing serial number 146031. The handgun was seized and processed as evidence. Six rounds of .25

COMPLAINT/RAMIREZ - 4
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

caliber ammunition were also found inside the pistol's magazine and seized and processed as well.

14. Upon arrival at the Sumas Station, I and BPA Calvin Moss conducted an interview of K. S. approximately 5:35 a.m. Agents used a Punjabi interpreter obtained through the Ad Astra language line to interpret in the Punjabi language. The interpreter I.D. # was 30684. This interview was video and audio recorded.

15. Prior to questioning K. S. as to his involvement in criminal activity, SA Dolan read K. S. his *Miranda* rights. K. S. stated he understood his rights and was willing to answer questions without the presence of an attorney.

16. K. S. stated he arrived at the U.S./Canada International Boundary earlier that night with H. S. in a taxi. K. S. stated he planned with H. S. to cross illegally into the U.S. without being inspected and that H. S. had coordinated with someone over the phone to facilitate their entry and travel into the U.S. in violation of law. K. S. stated H. S. had told him that a car would pick them up once they entered the United States.

17. K. S. stated he and H. S. entered the United States and ran south along a road until they reached the subject vehicle. K. S. stated that upon arrival at the subject vehicle, a man, later identified as RAMIREZ, was standing outside the truck. K. S. identified RAMIREZ as this man from a photographic lineup. K. S. also accompanied agents to RAMIREZ's holding cell at Sumas Station where RAMIREZ was being held alone. When K. S. saw RAMIREZ in-person, he indicated this was the same person who he identified in the photographic lineup.

18. K. S. stated when he and H. S. reached the subject vehicle, they both got into the subject vehicle and the subject vehicle left the area and drove until they were stopped by the Border Patrol.

19. At approximately 11:27 a.m., I and BPA Engels interviewed K. S. again using the Ad Astra language line to interpret in the Punjabi language. The interpreter I.D. # was 30684. This interview was audio and video recorded.

COMPLAINT/RAMIREZ - 5
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20. K. S. stated his family had made the arrangements for him to travel from India into Canada, then into the United States. K. S. did not know who his family used or contacted for the arrangements, however, he was aware his family would pay $1,500 dollars when he arrived at his destination.

21. K. S. stated H. S. contacted the U.S person and received all the information and location to get into the United States.

22. K. S. stated his understanding was that he and H. S. would be dropped off somewhere safe. They would then get a taxi to their destination. K. S. was able to identify subject number 3 (RAMIREZ) in a photographic lineup as the contact with whom, his friend, H. S. was communicating.

23. At approximately 6:45 a.m., I and BPA Moss interviewed H. S. using the Ad Astra language line to interpret in the Punjabi language. The interpreter I.D. # was 10168. This interview was video and audio recorded.

24. Prior to questioning H. S. as to his involvement in criminal activity, H.S. was provided his *Miranda* rights. During the interview, H. S. corroborated K. S. statements about taking an Uber/taxi to the U.S./Canada International Boundary and entering the U.S. illegally without being inspected.

25. H. S. stated he coordinated with a travel agent in India to arrange his illegal entry into the United States. H. S. stated he was given a phone number to call to coordinate his transportation into the U.S. H. S. stated he had several calls with both before and after he crossed the border.

26. H. S. stated after he and K. S. entered the United States, they ran for approximately 45-50 seconds to some buildings. H. S. was able to identify subject number 3 (RAMIREZ) in a photographic lineup as the person who was standing on the outside of the subject vehicle when they arrived.

27. At approximately 11:14 a.m., I and BPA Engel interviewed H. S. again using the Ad Astra language line to interpret in the Punjabi language. The interpreter I.D. # was 30684. The interview was audio and video recorded.

COMPLAINT/RAMIREZ - 6
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  28.  During the interview, H. S. restated that he used an Indian travel agent to
2  travel from India into Canada, then into the United States illegally because this travel
3  agent had a United States contact.
4  29.  H. S. received the phone number for his U.S. contact whom he was
5  supposed to call upon his arrival at the U.S border to be picked-up. H. S. stated he would
6  be paying the travel agent $1,500 dollars upon arrival to his destination which would be
7  paid by his family at home in India.
8  30.  H. S. stated upon arrival to the U.S/Canadian border, he called the U.S
9  contact number and was sent a map with directions of where to go to be picked up. H. S.
10 stated the U.S. contact was only going to drive him and K. S. approximately 5 to 6
11 kilometers. H. S. stated after that they would get a taxi to their next destination or go to a
12 restaurant.
13 31.  H. S. stated he did not have any other conversations with the contact as the
14 police showed up. H.S. identified the U.S contact through a photographic lineup and
15 selected RAMIREZ as his U.S. contact, initialing next to the photo selected. H. S. signed
16 a consent form allowing access to his personal cell phone an iPhone SE.
17 32.  A review of H. S.'s cell phone showed a conversation on H. S.'s WhatsApp
18 account between his account and telephone number 360-599-4862. In these messages H.
19 S. was given a time and location to meet the sender along with a map of the area. H. S.'s
20 WhatApp account also showed several voice calls occurred with 360-599-4862.
21 33.  Manthey, the driver of the vehicle, signed a consent form to search his
22 phone. During the search, agents discovered a phone contact named George with phone
23 number 360-599-4862.
24 34.  Both Manthey and front passenger, Fountaine were interviewed by law
25 enforcement. Manthey and Fountaine were provided their *Miranda* warnings. According
26 to Manthy, RAMIREZ asked him to drive RAMIREZ to the border, but Manthey denied
27 knowing the reason or purpose behind the trip. Manthey stated he, RAMIREZ and
28 Fountaine left together from a residence and drove directly to the border area. Fountaine

COMPLAINT/RAMIREZ - 7
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

stated that she and Manthey went to a casino, then picked up RAMIREZ and drove to the border area. Fountaine also denied knowing the purpose of their travel to the border.

35. Based on the communications between H. S. and phone number 360-599-4862, and a review of Manthey's cell phone showing the same phone number to be saved under the name George, your affiant believes this phone number was used by GEORGE RAMIREZ to coordinate the smuggling of K. S. and H. S. across the U.S./Canada border into the United States. RAMIREZ did not make a statement to law enforcement.

36. Law enforcement is in possession of RAMIREZ's cell phone, however at this time a search has not been conducted.

37. Based on the foregoing facts, I submit that there is probable cause to believe that GEORGE RAMIREZ committed the aforementioned crime.

_____
Jordan Dolan, Complainant
Special Agent
Homeland Security Investigations

The above-named agent provided a sworn statement to the truth of the foregoing Complaint and Affidavit in my presence. Based on the contents of this Affidavit, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 27th day of November, 2023.

_____
MARY ALICE THEILER
United States Magistrate Judge

COMPLAINT/RAMIREZ - 8
USAO #2023R1270

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970